IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**JITEN D. MEHTA,**

    **Petitioner,**

v.                                   **CIVIL ACTION NO. 1:10cv200**
                                          **(Judge Keeley)**

**TERRY O'BRIEN, Warden,**

    **Respondent.**

## REPORT AND RECOMMENDATION

### I. BACKGROUND

On December 2, 2010, the *pro se* petitioner, an inmate at SPC-Hazelton in Bruceton Mills, West Virginia, filed an Application for Habeas Corpus Pursuant to 28 U.S.C. § 2241, in which he seeks an order reinstating the twenty-seven good time credits that he lost as a result of a disciplinary proceeding. On December 20, 201, the petitioner paid the required $5.00 filing fee. By Order entered December 22, 2010, the court directed the respondent to show cause why the petition should not be granted. On February 23, 2011, the respondent filed a Motion to Dismiss, or in the alternative, Motion for Summary Judgment. On February 24, 2011, a Roseboro Notice was issued and on March 17, 2011, the petitioner filed a response.

### II. FACTS

The petitioner is a federal inmate committed to the BOP serving a 48-month term of imprisonment to be followed by a 3-year term of supervised release imposed by the United District Court for Maryland on April 21, 2008, for violating 26 U.S.C. § 7206 ("Aiding and Abetting in the

1

Preparation of False Tax Returns") and 18 U.S.C. § 1343 ("Wire Fraud") (Doc. 9-2, pp. 1-3). The petitioner was designated to the USP Hazelton on August 22, 2008. (Doc. 15-3). The petitioner's projected release date is March 8, 2012, via Good Conduct Time Release. (Doc. 15-2, p.1).

On September 9, 2009, during telephone monitoring by staff, it was discovered that the petitioner was using another inmate's telephone account[1] to make phone calls. (Doc. 15-4). The staff member called the petitioner into his office at which time the petitioner admitted using another inmate's telephone records to place calls to his daughter. Id. A review of the telephone records revealed that the petitioner had used another inmate's telephone account thirty-one (31) times in a seven (7) day period. Id. The following day at approximately 9:50 a.m., the petitioner received a copy of Incident Report number 1916251 in which he was charged with violating Prohibited Act Code 297, Use of Telephone for Abuses Other than Criminal Activity. Id.

On September 11, 2009, they Unit Disciplinary Committee ("UDC") referred Incident Report number 1916251 to the Disciplinary Hearing Officer ("DHO") and recommended the following sanctions should the petitioner be found to have committed the prohibited act: (1) loss of 27 days good conduct time; (2) 30 days disciplinary segregation; (3) 60 days loss of privileges; and (4) a disciplinary transfer. Id. Later that same day, the petitioner signed his Inmate Rights at Discipline Hearing form, acknowledging that he had been advised of the rights afforded him before the DHO (Doc. 15-5). Still later that day, the petitioner received the Notice of Discipline Hearing Before the DHO, informing him that he was being charged with violating Prohibited Act Code 297. On the form, the petitioner indicated that he did wish to have a staff representative present during the

---

[1]Each inmate is is assigned a secret Personal Access Code ("PAC") which is a nine (9) digit number. This number allows inmates to place a call by first entering the telephone number followed by the PAC cumber. All calls are automatically terminated after fifteen (15) minutes. (Doc. 15-10, p. 29).

hearing but did not wish to call a witness to testify. (Doc. 15-6).

On October 7, 2009, DHO Davis conducted the petitioner's Disciplinary Hearing. During the hearing, Drug Abuse Treatment Specialist S. Repine appeared with the petitioner as his Staff Representative. Specialist Repine stated that he interviewed two inmates at the petitioner's request and that one of the inmates admitted he gave the petitioner his telephone account number. Id. At the hearing, the petitioner admitted that the incident report was true and that he had committed the prohibited act. The petitioner further stated he had read the policy concerning phone calls and felt apologetic. The DHO determined that the petitioner had committed the act as charged. In reaching this conclusion, the DHO set forth the specific evidence upon which he relied in making his determination: (1) the reporting officers statements contained in the Incident Report; (2) the petitioner's admission that he had committed the prohibited act; and (3) the documentary evidence that another inmate's account had been used to make calls to numbers on the petitioner's approved list. The DHO imposed the following sanctions on the petitioner: (1) disallowance of 27 days Good Conduct Time; (2) 30 days disciplinary segregation, suspended pending 180 days clear conduct; (3) 180 days loss of phone privileges; and (4) 90 days loss of Trust Fund Limited Inmate Computer System ("Trulincs") privileges. The petitioner received a signed copy of the DHO report on October 23, 2009 at approximately 3:00 p.m. (Doc. 15-7).

## II CONTENTIONS OF THE PARTIES

The petitioner does not deny that he committed the prohibited act as charged nor does he allege any violation of his due process rights during the disciplinary proceeding. Instead, he maintains that he did not know that using another inmate's telephone account to make phone calls was a violation of BOP policy. Moreover, the petitioner contends that he was never informed that this was a violation of BOP rules. The petitioner also asserts that although the BOP considers it the

3

responsibility of the prisoners to educate themselves with regard to the rules and regulations of the institution, it is exceptionally hard to do this when you are being persecuted by staff and inmates because of your ethnic heritage. The petitioner notes that he is from India and "bears the resemblance of many of the terrorist that citizens of this nation are now taught to fear and because of this petitioner has limited associations that would permit him to make himself familiar with the rules and procedures." (Doc. 2, pp. 6-7).

In response to the petition, the respondent argues that the petitioner received all the due process required by the Supreme Court in Wolff v. McDonnell, 418 U.S. 539 (1974). In addition, to respondent argues that the evidence relied upon by the DHO was sufficient for a finding of guilt in the petitioner's case.

In his reply to the response, the petitioner maintains that he was not aware that use of another prisoner's telephone account was a violation of BOP policy until he was called to Counselor Wilson's office and advised that he had committed a prohibited act. In essence, the petitioner asserts that the failure of the BOP staff at Hazelton to properly inform and provide him with the rules and procedures for the use of the phones denied him the right to make a conscious decision to conform with the rules and policies of the BOP. The petitioner maintains that this failure resulted in his receiving a violation and sanctions.

## IV. STANDARD OF REVIEW

### A. Motion to Dismiss

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir.1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion

to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir.1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46. In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Conley, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," id. (citations omitted), to one that is "plausible on its face," id. at 570, rather than merely "conceivable." Id. Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I.DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir.2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir.2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir.2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order

5

to meet the plausibility standard and survive dismissal for failure to state a claim. Id.

## B. SUMMARY JUDGEMENT

The Supreme Court has recognized the appropriateness of Rule 56 summary judgment motions in habeas cases. See Blackledge v. Allison, 431 U.S. 63, 80 91977). So too, has the Fourth Circuit Court of Appeals. Maynard v. Dixon, 943 F.2d 407 (4th Cir. 1991). Pursuant to Rule 56c of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

Motions for summary judgment impose a difficult standard on the moving party; for it must be obvious that no rational trier of fact could find for the nonmoving party. Miller v. Federal Deposit Ins. Corp., 906 F.2d 972, 974 (4th Cir. 1990). However, the "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242-252 (1986). To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. Anderson, 477 U.S. at 248. It is well recognized that any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Industrial Co. V. Zenith Radio Corp., 475 U.S. 574, 587-88 1986).

## V. ANALYSIS

Prison disciplinary proceedings are not criminal prosecutions, and prisoners do not enjoy "the

full panoply of due process rights due a defendant in such [criminal] proceedings. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). Where, as here, a prison disciplinary hearing may result in the loss of good time credit, Wolff holds that due process requires the following:

1. giving the prisoner written notice of the charges at least 24 hours before he appears for his disciplinary hearing;

2. providing the prisoner a written statement by the fact finders as to the evidence relied on and reasons for the disciplinary action;

3. allowing the prisoner to call witnesses and present documentary evidence in his defense, when permitting him to do so will not be an undue hazard to institutional safety or correctional goals;

4. permitting the prisoner the aid of a fellow prisoner, or if that is forbidden, aid from staff or a competent inmate designated by staff, if the prisoner is illiterate or the complexity of the issue makes it unlikely that the prisoner will be able to collect and present the evidence necessary for an adequate comprehension of the case; and

5. providing impartial fact finders.

Id. at 564-571. The information before the Court reveals that the petitioner was provided due process as contemplated by Wolff.

First, the petitioner received written notice of the charges at least 24 hours in advance of the DHO hearing. More particularly, the petitioner received a copy of the incident report on September 10, 2009, and the DHO hearing was on October 7, 2009.

Second, the petitioner was provided a written statement by the DHO as to the evidence relied on and the reasons for the disciplinary action. The DHO report, dated October 19, 2009, notes the specific evidence relied upon to support the finding that the petitioner willfully violated Code 297,

Use of the Telephone for Abuses Other Than Criminal Activity-Circumventing. In addition, the report explains the reason for the disciplinary action. More specifically, the report states that

> "[t]he use of a telephone while incarcerated is a privilege, not a right. Circumventing the telephone monitoring procedures, or abusing the inmate telephone system in any way will not be permitted. It is an important part of the institution's security that inmates be allowed to contact those persons authorized. Not only is this an internal security matter but the Bureau of Prisons has an obligation to the public at large, to ensure that inmates are not using the telephone to contact unauthorized persons, for criminal activity, drug transactions, conducting business or to threaten or harass members of the public.
>
> To hold you accountable for your behavior, I have disallowed 27 days of your Good Conduct Time, ordered 30 days Disciplinary Segregation but have suspended this sanction pending 180 days of clear conduct, restricted your Trulincs privileges for 90 days, and restricted your telephone privileges for 180 days. Hopefully, these sanctions will have the desired effect of deterring you from engaging in inappropriate behavior of any sort. If not, repetitive acts of this sort will undoubtedly result in harsher consequences.

(Doc. 201, p. 12).

Third, the petitioner was advised of his right to call witnesses and present documentary evidence. He chose not to exercise those rights.

Fourth, the petitioner requested and was provided a staff representative to assist him during the hearing, and finally, the petitioner was provided an impartial decision-maker. In accordance with BOP regulations, the DHO did not act as the reporting official, investigating officer, UDC member, or witness and did not play a role in referring the charges.[2]

Not only was the petitioner provided all the due process rights required by Wolff, the findings made by the DHO are sufficient to support the finding that the petitioner violated Prohibited Act Code 297. The Supreme Court held in Superintendent, Mass. Corr. Inst., Walpole v. Hill, 472 U.S.

---

[2]See 28 C.F.R. § 541.16(b).

445, 455 (1985) that "[t]he requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board to revoke good time credits." The Supreme Court further stated:

> This standard is met if "there was some evidence from which the conclusion of the administrative tribunal could be deduced...." Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of the witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.

In reaching his decision, the DHO considered the reporting officer's statements contained in the Incident Report[3] as well as the petitioner's admission that he did use another inmate's PAC to place a telephone call as reported. After considering all of the evidence the DHO found that the petitioner had willfully violated Code 299 - Use of the Telephone for Abuses Other Than Criminal Activity-Circumventing. So long as there is evidence to support the DHO's determination, it must stand. See Superintendent at 455-56. Here, the testimony and documents considered by the DHO clearly provided "some evidence" from which a rational conclusion could be drawn that the petitioner committed the act as charged.

The undersigned acknowledges that the petitioner argues that he was not aware that his actions violated BOP policy until after he had committed the prohibited act. Even if true, this argument would not preclude the DHO from finding that he had committed the prohibited Act.

---

[3]Specifically, the reporting officer's statements contained in the Incident Report were as follows:

On September 9, 2009, at approximately 4:00 p.m. while monitoring phone calls placed from the Camp l monitored a phone call that was placed on inmate ___ account. I recognized the person on the call was not inmate ___. I then called inmate Mehta in my office and asked him about his call he stated that, "It was me on the phone and I was calling home about my daughter." He gave me his number and I used it." After a review of inmate _____ account, inmate Mehta has called and used inmate ___ PAC number 31 times over the past 7 days.
(Doc. 15-7, p. 2).

Moreover, the Court has been provided a Declaration from Melissa Wilson, a correctional counselor at the camp at USP Hazelton. In it, she states that each inmate who is designated to USP Hazelton is informed during his Admission and Orientation presentation that PAC numbers are not to be shared with anyone. More specifically, she notes that inmates are informed that sharing PAC numbers can result in disciplinary action. The petitioner signed his Unit Admission and Orientation Program Checklist on August 25, 2008, indicating that he had been oriented in all of the applicable areas, including Telephone Privileges, and had the opportunity to discuss the same with staff. (Doc. 15-9). Ms. Wilson also notes that in addition to attending the Institution's Admission and Orientation Program (which is mandatory), each inmate is provided a copy of the Admission and Orientation ("A&O") Handbook during his intake screening. Page 13 of the A&O handbook informs inmates that "**PAC numbers are not to be shared with anyone**. Sharing your PAC number can result in disciplinary action." (Doc. 15-10) (emphasis in original). The petitioner received his A&O handbook at USP Hazelton on August 22, 2008. (Doc. 15-8). Therefore, there is more than sufficient evidence to indicate that the petitioner was advised that use of another inmate's PAC number could result in disciplinary action, and it was his responsibility to know and understand the regulations regarding PAC numbers.

## VI. <u>RECOMMENDATION</u>

Based on the foregoing, the undersigned recommends that respondent's Motion to Dismiss, or in the Alternative, for Summary Judgement (Doc. 14) be **GRANTED**, and the petitioner's §2241 petition be **DENIED and DISMISSED WITH PREJUDICE**.

Within fourteen (14) days after being served with a copy of this Recommendation, any party may file with the Clerk of the Court, written objections identifying the portions of the

Recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the Honorable Irene M. Keeley, United States District Judge. Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as reflected on the docket sheet. The Clerk of the Court is further directed to prove a copy to all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic case Filing in the United States District Court for the Northern District of West Virginia.

DATED: March 2 9, 2011

/s/ James E. Seibert
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE